FRANK F. FASI AND ROBERT F. HARGREAVES *v.* THE CITY AND COUNTY OF HONOLULU, HERMAN LEMKE, CLESSON Y. CHIKASUYE, MATSUO TAKABUKI, KEKOA D. KAAPU, GEORGE KOGA, EUGENE F. KENNEDY, BEN F. KAITO, AND YOSHIRO NAKAMURA, AS COUNCILMEN OF THE CITY AND COUNTY OF HONOLULU, NEAL S. BLAISDELL, MAYOR OF THE CITY AND COUNTY OF HONOLULU, ROBERT F. ELLIS, ACTING MAYOR OF THE CITY AND COUNTY OF HONOLULU, AND E. HINANO COOK, DIRECTOR OF FINANCE OF THE CITY AND COUNTY OF HONO-LULU.

No. 4574.

MARCH 25, 1968.

RICHARDSON, C.J., MIZUHA, MARUMOTO, ABE, JJ., AND CIRCUIT JUDGE KING IN PLACE OF LEVINSON, J., DISQUALIFIED.

OPINION OF THE COURT BY MARUMOTO, J.

The question for decision on this appeal is the validity of salary increases for chairman and members of the council of the City and County of Honolulu contained in Ordinance No. 2711, passed by the council on October 5, 1965, and approved by the mayor on the following day.

The ordinance increased the salary of the chairman from $8,400 per year to $12,000 per year and the salary of each of the other councilmen from $7,200 per year to $10,500 per year, effective January 1, 1966.

The salaries in effect, before these increases, had been set by Ordinance No. 2193, passed by the council on June 26, 1962, and approved by the mayor on June 28, 1962, effective January 2, 1965.

Plaintiffs contend that the salary increases in Ordinance No. 2711 are invalid because they violate section 3-106 of the charter of the City and County of Honolulu, which reads as follows:

"Section 3-106. Salaries of Councilmen—The salary of each councilman shall be $4,200.00 per annum, except that the chairman shall receive an additional sum of $600 per annum. The council may change the salary of councilmen by ordinance but no increase of salary shall be effective during the term in which an increase is enacted. No increase of salaries shall be enacted during the period between the date of the city general election and the second day of January following."

At the time Ordinance No. 2711 was enacted, incumbent councilmen were serving a term commencing on January 1, 1965, and ending on December 31, 1968. Consequently, the salary increases provided in the ordinance could not have been made effective on January 1, 1966, in the absence of an amendment of the charter provision quoted above.

Plaintiffs set forth their contention in a complaint for declaratory judgment which they, as electors, property owners and taxpayers, filed in the circuit court against the city and county, mayor, acting mayor, director of finance, and councilmen who voted for the ordinance, as defendants.

To this complaint, defendants filed a motion to dismiss in which they contended that these salary increases are valid because they were made pursuant to Act 223 of the Session Laws of 1965, which amended section 3-106 of the charter.

Act 223 is a statute relating to compensation of officers and employees of the State and its political subdivisions. It provided in section 10 that the following provision be added to R.L.H. 1955, Ch. 138:

"Sec. 138- . Compensation of certain county officials. Any law to the contrary notwithstanding, each county including the City and County of Honolulu by ordinance shall fix the salaries for its officials whose salaries are presently specifically established by statute or ordinance."

The circuit court sustained defendants' contention, entered an order granting their motion to dismiss, and denied plaintiffs' motion for reconsideration of the order of dismissal. Hence, this appeal.

There are two issues on this appeal. They are, first, whether the legislature has the power to amend or repeal any provision of the city and county charter; and, second, if the legislature has such power, whether it amended or repealed section 3-106 of the charter by its enactment of Act 223.

With respect to the first issue, underlying plaintiffs' position is the assumption that a charter contemplated in the local government article of the State constitution is a constitutional charter which is sacrosanct from any legislative tampering. On that assumption, plaintiffs equate the city and county charter with a charter framed and adopted as authorized in the constitution.

The State constitution became the organic law of this State on August 21, 1959, upon the admission of Hawaii into the Federal union. It provides in article VII, section 2, as follows:

"Section 2. Each political subdivision shall have power to frame and adopt a charter for its own self-government within such limits and under such procedures as may be prescribed by law."

The statutory implementation mentioned in this constitutional provision has been supplied by Act 73 of the Session Laws of 1963, "An Act Relating to the Framing and Adopting of Charters by the Counties," as amended by Act 65 of the Session Laws of 1965. The provisions of Act 73 and the amendments thereto made in Act 65 are compiled in R.L.H. 1955, 1965 Supp., Ch. 143-A.

The charter of the City and County of Honolulu was not framed and adopted under the above mentioned statutes. It was drafted by a charter commission created by Act 225 of the Session Laws of 1955, approved by the electors of the city and county at the special charter election held on June 14, 1958, and enacted into law by Act 261 of the Session Laws of 1959. All of these events occurred before the effective date of the State constitution. The final event which gave life to the charter, namely, approval of Act 261 by the Governor, occurred on June 5, 1959, eleven weeks before the constitution became operative as the organic law of the new state.

Thus, the city and county charter does not come technically within the framework of the constitution. Plaintiffs, however, argue that the charter is within the spirit of the constitution and that the accident of its adoption shortly before the effective date of the constitution should not make it subject to legislative control any more than a charter contemplated in the constitution. This argument is cogent only if plaintiffs' assumption mentioned earlier in this opinion is correct. For this reason, before considering the argument, we will inquire into the question as to whether a charter contemplated in the constitution is a true constitutional charter which is insulated from legislative interference, or is a statutory charter subject to complete legislative control.

The local self-government provision set forth in article VII, section 2, of the constitution is not self-executing. To work at all, it must have statutory implementation. Without such implementation, it is a dead letter. That such was the understanding of the convention is shown in the following statement of the Committee on Submission and Information in its release on the local government article:

"It was the wish of the delegates not to make the provision for home rule completely self-executing. The legislature must provide the procedure by which home rule may be developed. Possibly the legislature will not meet this obligation. In such an event, the provision for amendment and revision of the constitution permits the article to be redrafted at the end of ten years and it can then be made self-executing." *Constitution of the State of Hawaii: A Series of Newspaper Releases Explaining the Various Articles of the Constitution Issued by the Committee on Submission and Information,* Article VII, Local Government, p. 35.

The convention did not make the provision self-executing because it was not in favor of granting complete home rule to local government units. This is evident from statements in Committee of the Whole Report No. 21 and Standing Committee Report No. 74.

These reports show that three patterns of local government were presented to the convention. The first pattern was local government under complete legislative control as under the Hawaii Organic Act; the second was local government with maximum autonomy and power to tax; and the third was local government with a greater degree of autonomy than under the Organic Act but without taxing power.

The Committee on Local Government chose to follow the third pattern, which it incorporated in Committee Proposal No. 26. In this proposal, after providing in section 1 for legislative definition of political subdivisions by general and uniform laws, it provided in the next section as follows:

"Section 2. Each political subdivision so defined shall have power to provide for the selection of its officials and the form and management of its own affairs, by charter, approved by a majority of the voters registered therein. Unless the governing body of a political subdivision so requests, the legislature shall enact no law affecting the property, finances or government of such subdivision which shall be special or local in its terms or in its effect."

In connection with this provision, the committee made the following statement:

"The first sentence of Section 2 deposits a constitutional right with each political subdivision to adopt a charter of its own choosing. The Committee feels that the legislature should establish mechanics for this including the manner of electing a charter commission, the composition of this group, their method of procedure and the means for referring the charter to the people and should also provide the funds therefor. This does not give the legislature authority to detail what shall be contained in a charter or to interfere in any way with the self-determination of each political subdivision. If a political subdivision has the power to frame and adopt its own charter, even in the absence of complete taxing power, it is considered to have at least some degree of home rule. This is the political philosophy strongly endorsed by your Committee." *Proceedings of the Constitutional Convention of Hawaii*, vol. I, pp. 228-230, Standing Committee Report No. 74.

The Committee of the Whole did not concur with the Committee on Local Government. It rejected section 2 of Committee Proposal No. 26 on the ground that it "gave local political subdivisions a greater degree of autonomy than was compatible with the overall sense of local government consistent with our evolving governmental structure, form and practices." It then replaced the rejected provision with the present language of article VII, section 2, "to insure the people greater local government than that presently existing," and added a provision, now found in article VII, section 4, to curb "legislative practices found obnoxious by local units."

The following statement in Committee of the Whole Report No. 21 discloses the reason for the action of the committee:

"After deliberation and debate for a period extending into three days, the consensus of the Committee of the Whole became apparent. Pattern No. 1 on local government was viewed with some appreciation for its historical value, but it

was discarded as failing to insure any real degree of autonomy to local political subdivisions, or to protect them from legislative abuses in the form of mandates.

"Pattern No. 2 on local government was considered the ideal on local autonomy but definitely impractical in the Hawaiian scene because of geography, history and greater expense of operation.

"Pattern No. 3 was viewed as an improvement over Patterns Nos. 1 and 2, but not entirely satisfactory because Section 2 thereof gave local political subdivisions a greater degree of autonomy than was deemed compatible with the overall sense of local government consistent with our evolving governmental structure, form and practices.

"With further exchange of opinion on the subject, additional delegates supported a position which would leave unchanged present relationships between the legislature and local units, but would make certain provisions to curb some legislative practices found obnoxious by local units. One of these practices is compelling county government to pay accrued claims. This form of legislation it was urged, usurped the judgment of the courts and interfered unnecessarily with local affairs and finances. It was for the purpose of preventing such continued practice that the sentence, 'No laws shall be passed mandating any political subdivision to pay any previously accrued claim,' was incorporated into the provision on local government." *Proceedings of the Constitutional Convention of Hawaii,* vol. I, pp. 332-335, Committee of the Whole Report No. 21.

It is clear from the language of article VII, section 2, and the foregoing account of its formulation in the convention, that a charter contemplated in the constitution is no more than a statutory charter. The constitution merely empowers each political subdivision to frame and adopt a charter "within such limits and under such procedures as may be prescribed by law," thus leaving the scope of local self-government to legislative control. There is, however, one constitutional limitation in the exercise of this control. That limitation is contained in article

VII, section 1, which provides: "Each political subdivision shall have and exercise such powers as shall be conferred under general laws." Subject to this provision, the legislature is free to enact any legislation affecting the powers of political subdivisions. There is nothing in the constitution which says that the legislature may not amend a charter provision after a political subdivision has once adopted a charter.

In this situation, it is unnecessary to consider plaintiffs' argument equating the city and county charter with a charter contemplated in the constitution. If a charter framed and adopted as authorized in the constitution is subject to legislative amendment, *a fortiori*, the city and county charter may be amended by the legislature because it is purely a creature of the legislature.

So, we turn to a consideration of the second issue, as to whether the legislature amended section 3-106 of the city and county charter by enacting Act 223.

Plaintiffs contend that Act 223 did not amend section 3-106 of the charter, expressly or impliedly, not expressly because it does not specifically mention that charter provision, and not impliedly because it does not contain provisions contrary to or irreconcilable therewith.

True, Act 223 did not specifically mention section 3-106 of the charter and did not expressly amend that provision as such. But the Act contains three items which manifest the legislative intent to make the provision of section 10 the sole authority under which counties, including the City and County of Honolulu, may fix the salaries of their officials whose salaries were previously established by statute ordinance. First, it made section 10 a part of R.L.H. 1955, Ch.138. That is a chapter which contains "General Provisions Common to All Counties." Second, it prefaced the grant of authority in section 10 with the clause, "Any law to the contrary notwithstanding." Section 3-106 of the charter is a "law to the contrary," as will be explained in the next paragraph. Third, it provided in section 18: "All laws and parts of laws heretofore enacted which are in conflict with the provisions of this Act are hereby amended to conform herewith." Section 3-106 of the charter is a part of a law theretofore enacted,

which is in conflict with section 10 of the Act and which comes within the amendatory scope of this section 18.

Plaintiffs argue that section 10 of Act 223 is not in conflict with section 3-106 of the charter because both provisions cover the same ground. This argument ignores the last sentence of section 3-106, which provides: "No increase of salaries shall be enacted during the period between the date of the city general election and the second day of January following." There is no such limitation in Act 223.

Where two statutes cover the same ground in identical or equivalent language, but one imposes an additional requirement or limitation, the statutes are in conflict with each other. In *Pipoly* v. *Benson,* 20 Cal.2d 366, 125 P.2d 482 (1942), the court held that under a constitutional provision providing for enforcement of local regulations which "are not in conflict with general laws," an ordinance is invalid if it attempts to impose "additional requirements in a field which is fully occupied by the statute."

We think that even if there is no clear conflict between section 10 of Act 223 and section 3-106 of the charter, the latter has been superseded by the former under the rule recognized in *Wong Sar* v. *Uehara,* 30 Haw. 658, 663 (1928), that "when the later act is exclusive, that is, when it covers the whole subject to which it relates, and is manifestly designed by the legislature to embrace the entire law on the subject, it will be held to repeal by implication all prior statutes on that matter whether they are general or special, even though they are not repugnant, unless it is expressly provided that prior special acts shall not be affected." 82 C.J.S., *Statutes,* § 292; 50 Am. Jur., *Statutes,* § 544; 1 Sutherland, *Statutory Construction,* § 2021 (3d ed. 1943). The case of *Miami Water Works Local 654* v. *Miami,* 157 Fla. 445, 26 So.2d 194 (1946), relied on by plaintiffs and which as a matter of fact is the only authority cited in their opening brief, states this very same rule. The statement there is that courts may declare that one statute amends or repeals another by implication where there is a clear indication "that the later statute was intended to prescribe the only rule which should govern the case provided for, and that there is no field in which the provisions

of the statute first in point of time can operate lawfully without conflict."

It is manifest from the use of the introductory clause "Any law to the contrary notwithstanding," section 10 of Act 223 was designed to cover the entire field to which it relates, namely, the fixing of salaries of county officials whose salaries were previously established by statute or ordinance.

Act 223 is an enactment of a bill introduced in the Third State Legislature as House Bill No. 279. As originally introduced, the bill contained an across-the-board salary increase of .7½% for elected officials, effective January 1, 1966. This was amended by the House Appropriations Committee to read as follows in House Draft 2:

"Sec. 138 . Compensation of certain county officials. Any law to the contrary notwithstanding, each county shall, by ordinance, fix the salaries for its chief executive officer, members of its legislative bodies, county attorney, corporation counsel, public prosecutor, financial officers, clerk, chief of police or fire chief, as the case may be."

When the bill went to the Senate, the Senate Ways and Means Committee substituted for the language in House Draft 2 the language which was enacted as section 10 of Act 223. It will be noted that House Draft 2 used the generic term "county" and did not specifically mention the city and county, while section 10 of Act 223 leaves no doubt that the city and county is within its scope by inserting after the word "county" the words "including the city and county of Honolulu." If the city and county is covered, then the Act must operate in the city and county in the same manner that it operates in other counties, without the restriction in the last sentence of section 3-106 of the charter. Construed otherwise, the Act will violate article VII, section 1, of the constitution.

Affirmed.

*W. Patrick O'Connor* (*A. William Barlow* with him on the briefs) for plaintiffs-appellants.

*Stanley Ling,* Corporation Counsel, and *Henry N. Kitamura,* Deputy Corporation Counsel (*Sonia Faust,* Deputy Corporation Counsel, on the brief) , for defendants-appellees.