Peggy Ha'o ROSS and Frederick Donald Ross, Individually and on Behalf of all other persons similarly situated, Plaintiffs,

Bruce Bowen and Steven A. Black, Plaintiffs-Intervenors,

v.

Stanley S. GOSHI, Director, Department of Public Works, County of Maui, State of Hawaii, et al., Defendants.

Civ. No. 72-3610.

United States District Court, D. Hawaii.

Dec. 20, 1972.

Michael A. Town, Hawaii Legal Services Project, Wailuku, Hawaii, for plaintiffs.

John S. Edmunds, Mattoch, Edmunds, Kemper & Brown, Honolulu, Hawaii, for plaintiffs-intervenors.

Ernest K. C. Ching, Deputy County Atty., County of Maui, Wailuku, Maui, Hawaii, for defendants.

Outdoor Circle, Inc., J. Garner Anthony, Anthony, Waddoups, Hoddick & Anderson, Honolulu, Hawaii, amici curiae.

SAMUEL P. KING, District Judge.

■ Plaintiffs and Plaintiffs-Intervenors, individually and on behalf of all other persons similarly situated, brought this suit against officials of the County of Maui, State of Hawaii, for a declaratory judgment and injunctive relief seeking to have this court declare unconstitutional section 3(a)(4) of Maui County Ordinance No. 308 (hereinafter sometimes "MCO 308"), as amended by Maui County Ordinance No. 697 (hereinafter sometimes "MCO 697"), on the grounds that it is in violation of the First and Fourteenth Amendments to the Constitution of the United States.[1]

As amended, section 3(a)(4) prohibits all outdoor political campaign signs—except signs identifying the headquarters of a political candidate—placed on real property, buildings and structures in view of the general public.[2]

---

1. Plaintiffs rely on 42 U.S.C. § 1983, 28 U.S.C. §§ 2201 and 2202, Rules 54, 57 and 58 of the Federal Rules of Civil Procedure. Jurisdiction of this court is founded on 28 U.S.C. § 1343(3) and (4). This being an attack on a county ordinance involving county officials, a three judge court is not required. Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967).

2. Amended section 3(a)(4) also professes to regulate the use of "bumper stickers" and other signs attached by adhesives to motor vehicles and exempts them from the

Plaintiff Peggy Ha'o Ross and Plaintiffs-Intervenors Bruce Bowen and Steven A. Black[3] are residents of Maui County and were duly registered candidates in the primary election held on October 7, 1972, for the respective County offices of Mayor, Councilman from Molokai Island, and Councilman from Maui Island. In addition, Plaintiff-Intervenor Steven A. Black was successful in the primary election and will be a candidate in the general election to be held on November 7, 1972. In furtherance of their campaigns for elective office, they have displayed, are displaying and wish to display in the future, political campaign signs in a manner prohibited by amended section 3(a)(4) of MCO 308.

Plaintiff Frederick Donald Ross is a registered voter in Maui County, and appears as the alleged representative of (1) all individuals who wish to campaign for candidates of their choice using methods proscribed by MCO 308, and (2) registered voters in the County who wish to consider the views of all candidates, some of whom might utilize the methods proscribed by MCO 308. He is also the husband of Peggy Ha'o Ross.

Defendants Stanley S. Goshi and Abraham Aiona are public officials of Maui County and are respectively, Director of the Department of Public Works and Chief of Police.[4]

MCO 308 provides for the regulation and control of outdoor signs. Signs are defined in section 2 to include those "used to advertise or promote the interests of any person when the same is placed out of doors on real property or buildings or structures thereon in view of the general public." The declared purpose in section 1 is to abate the traffic and fire hazards caused by the proliferation of such signs and to preserve the natural beauty of the County. Section 6 provides, in pertinent part, that "[i]t shall be unlawful to erect or maintain" all signs upon penalty of up to $500 a day,[5] except those permitted under section 8, and that section provides no exception for political campaign signs. The intent to prohibit such signs is made manifest in amended section 3(a)(4) where it is stated: "[i]t is the intent of this section to prohibit all political campaign billboards, signs and posters and no other part of this article shall be used as a means of permitting

provisions of Ordinance No. 308 for a period of 60 days preceding and 10 days following an election. See n. 6, *infra.* Plaintiffs and Plaintiffs-Intervenors allege that this too is a violation of the First and Fourteenth Amendments. However, the definition of the term "sign" in section 2 of Ordinance No. 308 is very specific and does not include signs attached to motor vehicles. For the purposes of the Ordinance, a sign is objectionable only "when the same is placed . . . on real property or buildings or structures thereon in view of the general public." Accordingly, the attempt to regulate the use of signs attached to motor vehicles in amended section 3(a)(4) is at best inept because the definition of "sign" in section 2 *excludes* such signs from the Ordinance. Deputy County Attorney Ching at trial on October 26, 1972, acknowledged that this attempted regulation was unenforceable.

3. The court granted Motions to Intervene by Bruce Bowen on August 7, 1972, and by Steven A. Black on October 26, 1972.

4. As Director of the Department of Public Works, Defendant Goshi is charged with the enforcement and administration of Ordinance No. 308. See § 5, MCO 308. Defendant Aiona, as Chief of Police, has a general responsibility for the enforcement of all laws and ordinances applicable to Maui County. See § 5(a), MCO 308. It was determined that no proper cause of action was laid against Defendant Cravalho, Mayor of Maui County, and a Motion to Dismiss as to him was granted on October 26, 1972.

5. Penalties may not be assessed, however, until the owner of the sign or the owner or tenant of the premises upon which the sign is erected or maintained has been informed by written notice from the Director of the Department of Public Works stating that the sign is in violation of the ordinance and directing that it be removed. See §§ 9 and 5(c), MCO 308.

political campaign billboards, signs or posters. . . ." [6]

As originally enacted on October 20, 1961, section 3(a)(4) exempted political campaign signs not exceeding 18 square feet in display surface from the operation of the law for a period of 60 days preceding and 10 days following a special or general election.[7] This exemption was withdrawn by the County Council on May 24, 1971, with the enactment of MCO 697 amending section 3(a)(4).[8] As noted above, amended section 3(a)(4) bans *all* political campaign signs *at all times*. Moreover, County authorities have publicly announced their intention to enforce this prohibition,[9] and Plaintiffs and Plaintiff-Intervenor Bowen have been notified by uniformed policemen that their actions in displaying political campaign signs are illegal and will subject them to prosecution.

Defendants argue that the court should abstain from deciding the merits of this case, in conformity with the principles enunciated in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and related cases.[10] *Younger* concerned an action in federal court to stay a state court criminal proceeding on the grounds that the subject penal statute was in violation of the First and Fourteenth Amendments. The Supreme Court held that abstention was proper even though the statute was possibly unconstitutional "on its face." 401 U.S. at 54, 91 S.Ct. 746. However, as noted in the recent Ninth Circuit case of Rivera v. Freeman, 469 F.2d 1159 (decided November 17, 1972), the threshold question in applying *Younger* is whether the federal action is an attempt to stay state court proceedings. There are no state proceedings pending in this case and hence the principles of comity and feder-

---

6. As amended by MCO 697, section 3(a)(4) reads as follows:
 "Section 3. Exempt Signs.
 The following types of signs are exempted from all of the provisions of this ordinance . . . .
 (a) All signs of a temporary nature, which shall include:
 * * * * *
 (4) Political campaign signs. Bumper stickers and other signs attached by adhesives to motor vehicles announcing candidates seeking political office, provided that such bumper stickers and other signs attached by adhesives to motor vehicles shall be permitted only for a period of 60 days preceding a primary or special election and for a period of 10 days following the general election. *It is the intent of this section to prohibit all political campaign billboards, signs and posters and no other part of this article shall be used as a means of permitting political campaign billboards, signs or posters,* provided that signs identifying the headquarters of a political candidate may be erected and maintained in accordance with this article." (Emphasis added).

7. As originally enacted, subsection (4) of section 3(a) read as follows:
 "(4) Political campaign signs. Signs or posters not exceeding 18 square feet in display surface, announcing candidates seeking political office; provided that such signs or posters shall be permitted only for a period of 60 days preceding a general or special election and for a period of 10 days following such election."

8. See n. 6 above. MCO had no other provisions and its sole purpose was to prohibit all political campaign signs.

9. On October 6, 1972, the County Attorney publicly announced at the County Council Meeting that if amended section 3(a)(4) was found to be constitutional, his office would prosecute all violations "whether it took place six months ago, three months ago, or just yesterday . . . ." See Exhibit A of the Motion to Reconsider Order for Preliminary Injunction filed October 18, 1972. A preliminary injunction against enforcement of the disputed section had been issued by this court on August 7, 1972.

10. See Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971).

alism which underlie *Younger* are not controlling here.[11]

Section 8 of MCO 308, as amended by MCO 697, allows the display of various types of commercial signs after licensing and regulation. A wide range of other signs are exempted by section 3 from any form of regulation. These include all signs of a temporary nature, small signs not exceeding two square feet in display surface, institutional signs, public signs, directional signs, theater signs, and so on. Yet political signs reasonable in size, structure and appearance are totally banned. The operative distinction, then, between political signs that are proscribed and other signs that are permitted is the message on the sign. The question before the court is whether this selective prohibition of political signs violates constitutionally protected rights of Plaintiffs and Plaintiffs-Intervenors. This court holds that it does.

It has been continually recognized that reasonable time, place and manner regulation of outdoor signs may be enacted to further significant governmental interests. See Peltz v. City of South Euclid, 11 Ohio St.2d 128, 228 N. E.2d 320 (1967). Similarly, there may be sufficient regulatory interests justifying selective prohibition of certain types of outdoor signs. But these justifications must be carefully scrutinized where the prohibition encroaches upon First Amendment freedoms. Because political campaign signs are plainly a form of expression protected by the First Amendment, see Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); Peltz v. City of South Euclid, *supra*, the County has the burden of showing not only that MCO 697 has some rational relationship to the effectuation of a proper governmental purpose, but additionally, that it is "necessary to promote a *compelling* state interest." Dunn v. Blumstein, 405 U.S. 330, 337, 92 S.Ct. 995, 1000, 31 L.Ed.2d 274 (1972) (Emphasis by the Supreme Court). And there is no compelling state interest in a particular regulatory scheme when less drastic means are available for achieving the same basic purpose. See Shelton v. Tucker, 364 U. S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); Talley v. California, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960).

Defendants have made no showing that political signs reasonable in size, structure, appearance and placement constitute a safety hazard or blemish on the natural beauty of Maui County different from the many types of commercial and exempt signs expressly permitted by MCO 308. Defendants did show that, under MCO 308 as originally enacted, political signs appeared during the exempted election season [12] in such profusion and variety as possibly to warrant some sort of regulation.[13] The of-

---

11. Defendants also contend that this case is moot because Plaintiff Peggy Ha'o Ross and Plaintiff-Intervenor Bowen were defeated in the primary election held on October 7, 1972. This argument overlooks Plaintiff Frederick Donald Ross and Plaintiff-Intervenor Black, both of whom continue to have a present stake in this litigation. With respect to Plaintiff Frederick Donald Ross, this court found, pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, that he properly represents a class of persons composed of citizens who desire to campaign in the County of Maui for candidates to elective office. Defendants' position fails for the additional reason that in this Circuit it is the rule that the mooting out of the representative of a class in a class ac-

tion does not preclude the continuing jurisdiction of the court as to others in the original class, nor bar the representative from litigating the issue on their behalf. Rivera v. Freeman, 469 F.2d 1159 (9th Cir. decided November 17, 1972). Nor is the case moot where the issue can be reasonably expected to arise again in the future. *See, e. g.,* Jeannette Rankin Brigade v. Chief of Capitol Police, 137 U.S.App. D.C. 155, 421 F.2d 1090 (1969).

12. See footnote 7.

13. "Every other year a unique form of flora (politicus signus Mauianus) apparently bursts into bloom almost overnight during September.

"You can see examples of this growth throughout the County, but it is most ap-

ficial reaction to this situation was to enact MCO 697. In a constitutional context, this was overreaction. As noted by the Supreme Court of Ohio in Peltz v. City of South Euclid, *supra*, whose reasoning this court adopts:

> There are numerous devices available to a municipality other than outright prohibition to combat the nuisances which might flow from the use of political signs. A municipality is not powerless to enact and enforce reasonable regulations directed against those responsible for littering the streets or private property. It may enact ordinances prohibiting the attachment of political posters to public property and permitting recovery of the cost of removal of such posters. [Citation]. *It may not, on the other hand, enforce a wholesale prohibition against them.* 11 Ohio St.2d at 133, 228 N.E.2d at 324. (Emphasis added.)

Accordingly, MCO 697 (amending section 3(a)(4) of MCO 308) is unconstitutional because it infringes on Plaintiffs' and Plaintiffs-Intervenors' rights to freedom of speech and equal protection of the law when less drastic means are available to foster the governmental interests of public safety and aesthetics advanced by Defendants. Dunn v. Blumstein, *supra*; Peltz v. City of South Euclid, *supra*; Schneider v. New Jersey, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939).

The court, in holding MCO 697 unconstitutional leaves section 3(a)(4) as it was prior to the 1971 amendment, that is, as originally enacted by MCO 308.

■ It is a general rule of application that, where an act purporting to amend and re-enact an existing statute is void, the original statute remains in force. Frost v. Corporation Comm'n, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483 (1929); Conlon v. Adamski, 64 App.D. C. 274, 77 F.2d 397 (1935); Weissinger v. Boswell, 330 F.Supp. 615 (D.C., 1971). See 82 C.J.S. Statutes § 270; 16 Am.Jur.2d Constitutional Law § 184. The Hawaii cases cited by Plaintiffs and Plaintiffs-Intervenors for the proposition that a different rule exists in Hawaii, see Reitz v. Mealey, 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21 (1941), are not on point.[14] This court's own research indicates that the Hawaii Supreme Court has never decided this precise issue, but apparently leans toward the general rule. See Hind v. Wilder's Steamship Co., 14 Haw. 215, 221 (1902), where it is stated: "If [the Act] is void because not approved until the day . . . on which the Joint Resolution of Annexation was approved by the President of the United States . . . the prior Act . . . though in its terms repealed by the latter . . . would, we presume, remain in force if otherwise valid."

■ It remains to decide whether the provisions of MCO 308, as originally enacted, are reasonable in light of the principles outlined above. Sheared of the void amendment, the Ordinance regulates political campaign signs on the same basis as other signs rather than singling them out for selective prohibition. Presumably, a political sign may

---

parent on corner lots, and trees and fences in prominent view of passers by.

"Although these black and white photos cannot convey the chromatic exuberance of the 'blossoms,' they can give you an idea of the 1970 crop now in full bloom. The color fades somewhat after October 3, although some of the blooms take on new vigor up until the first Tuesday in November.

"You might occasionally find a straggler hanging on, even into the following year where some gardener has neglected to prune away the old crop. The unusual growths seem to flourish in a season of hot air and liberal applications of a fertilizer known locally as BS." Maui News, Wednesday, September 16, 1970, page B5.

14. Fasi v. City and County of Honolulu, 50 Haw. 277, 439 P.2d 206 (1968); Wong Sar v. Uehara, 30 Haw. 658 (1928); Territory v. Wills, 25 Haw. 747 (1921); In re Shee Mui Chong Yuen's Repatriation, 73 F.Supp. 12 (D.C. Haw. 1944).

be displayed at any time in the County as long as it conforms to the restrictions placed on outdoor signs generally. In addition, section 3(a)(4) exempts all political campaign signs not exceeding 18 square feet in display surface from the operation of the Ordinance for a period of 60 days preceding and 10 days following an election. Thus political signs are given special favorable treatment not accorded other types of signs. The court believes that this is a proper balancing of the conflicting interests involved here, and therefore holds that MCO 308 does not unreasonably restrict Plaintiffs and Plaintiffs-Intervenors in the exercise of their First Amendment right to freedom of speech. See Town of Huntington v. Estate of Schwartz, 63 Misc. 2d 836, 313 N.Y.S.2d 918 (D.Ct. Suffolk Co. 1970), where a New York court held that a similar ordinance exempting political signs for a period of 42 days preceding an election was reasonable.

 Plaintiffs and Plaintiffs-Intervenors have moved for an award of attorneys' fees. The statutes which are the basis of relief on the merits do not specifically provide for the awarding of fees, and the general rule is that fees are not recoverable absent an express statutory authorization. The courts have, however, developed exceptions to this rule where "overriding considerations indicate the need for such a recovery." Mills v. Electric Auto-Lite, 396 U.S. 375, 391–392, 90 S.Ct. 616, 625, 24 L.Ed.2d 593 (1970). The power to grant counsel fees in such situations is inherent in the equity power of the court, Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); Mills v. Electric Auto-Lite, *supra,* and is committed to the "unfettered discretion" of the trial judge. Ojeda v.

Hackeny, 452 F.2d 947, 948 (5th Cir. 1972). See La Raza Unida v. Volpe, 57 F.R.D. 94 (N.D. Cal. 1972).

 Plaintiffs and Plaintiffs-Intervenors justify an award of attorneys' fees on the ground that they have acted as "private attorneys-general" in litigating this action aimed not at personal advantage but at advancing the public interest. Recent cases have recognized that "whenever there is nothing in a statutory scheme which might be interpreted as precluding it, a 'private attorney-general' should be awarded attorneys' fees when he has effectuated a strong Congressional policy which has benefited a large class of people, and where further the necessity and financial burden of private enforcement are such as to make the award essential." La Raza Unida v. Volpe, *supra* at 98. See also, Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971); Bradley v. School Board of City of Richmond, Virginia, 53 F.R.D. 28 (E.D.Va.1971); Sims v. Amos, 340 F.Supp. 691 (M.D.Ala. 1972); Hammond v. Housing Authority, 328 F.Supp. 586 (D.C.Or.1971); Bates v. Hinds, 334 F.Supp. 528 (N.D.Tex.1971); Dyer v. Love, 307 F.Supp. 974 (N.D. Miss.1969).[15]

 Applying these principles to the instant case, this court holds, as a matter of discretion, that an award of attorneys' fees is appropriate as to attorneys for Plaintiffs-Intervenors, but not as to Plaintiffs' attorneys, the Hawaii Legal Services Project.

Because the public authorities normally charged with the enforcement of the law are defendants in this action, the only practicable means of enforcing section 1983 is by private parties, such as

15. Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1968), cited by Defendants, is not to the contrary. That case involved an area of the law (trademark actions under the Lanham Act, 15 U.S.C. § 1051–1127) where Congress has prescribed such "intricate remedies" that the absence of statutory authorization for attor-

neys' fees must be read as an intent to prohibit such awards. Section 1983, on the other hand, is not a statute providing detailed remedies and there is thus no reason to infer any congressional intent to limit the otherwise broad equitable powers of this court. See Mills v. Electric Auto-Lite, *supra,* 396 U.S. at 391, 90 S.Ct. 616.

Plaintiffs and Plaintiffs-Intervenors, acting on their own initiative. Yet private parties are least able to bear the cost of vindicating constitutional rights —particularly where, as in this case, they are vigorously opposed by a governmental entity. In this regard, what was said by Judge Merhige in the *Bradley* case is fully applicable here:

> Moreover, this sort of case is an enterprise on which any private individual should shudder to embark. No substantial damage award is every [sic] likely, and yet the costs of proving a case for injunctive relief are high. To secure counsel willing to undertake the job of trial, including the substantial duty of representing an entire class (something which must give pause to all attorneys, sensitive as is the profession to its ethical responsibilities) necessarily means that someone—plaintiff or lawyer—must make a great sacrifice unless equity intervenes. 53 F.R.D. at 40.

The Hawaii Legal Services Project, however, is funded by the government.[16] Legal Services' attorneys can function as private attorneys-general irrespective of whether this court awards them counsel fees. Indeed, this is one of the reasons underlying the establishment and funding of Legal Services Projects throughout the nation. There is thus no "necessity" for an award of fees within the test laid down by La Raza Unida v. Volpe, *supra*, 57 F.R.D. at 98. See Gaddis v. Wyman, 336 F.Supp. 1225 (S. D. N.Y. 1972); Givens v. W. T. Grant Co., 457 F.2d 612 (2d Cir. 1972).

Plaintiffs and Plaintiffs-Intervenors will be allowed their costs.

This Decision shall constitute the court's findings of fact and conclusions of law herein pursuant to Rule 52 of the Federal Rules of Civil Procedure. Appropriate orders pursuant to this decision will be entered upon presentation.

The parties may be heard upon the amount of attorneys' fees to be awarded to attorneys for Plaintiffs-Intervenors and upon any disputed items of costs.

---

16. The Hawaii Legal Services Project is a nonprofit organization. Eighty percent of its funds are provided by the federal government, and another 10 to 12 percent are supplied by the State of Hawaii. The rest is provided by private contributions of one form or another. Altogether over 90 percent of the Project's funding comes from government sources.