**Laurence RUNYON, Plaintiff,**

**v.**

**Frank M. FASI, Herbert Muraoka, Donald Clegg, and Richard Kaneshiro, in their individual and official capacities, Defendants.**

Civ. No. 90–00752 DAE.

United States District Court,
D. Hawaii.

April 15, 1991.

As Amended May 15, 1991.

---

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND FOR ATTORNEY'S FEES

DAVID A. EZRA, District Judge.

Plaintiff Laurence Runyon ("Runyon") brings this motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. Runyon's motion came on for hearing before this court on April 15, 1991. Carl M. Varady, Esq. appeared on behalf of Runyon; Sandra A. Simms, Esq. appeared on behalf of the defendants. The court, having heard oral argument and having considered the memoranda submitted in support of and in opposition to Runyon's motion, finds that ordinance 86–96 which purports to prohibit outdoor political signs on private and public property is overbroad and an unconstitutional restriction on the first amendment protection of freedom of speech. Therefore, this court GRANTS Runyon's motion for summary judgment and for attorney's fees.

## BACKGROUND

On or about September 14, 1990, Runyon displayed two 2' × 3' signs on his private residential property.[1] The signs said, "Elect Stan Snodgrass 30th House District; He'll Get the Job Done." Approximately four days later, Runyon received a "Notice of Violation" from the City and County of Honolulu, which informed him that he was in violation of § 3.90–2 of Ordinance 86–96 (the "Ordinance"). The "Notice of Violation" stated that if Runyon did not comply with the requirements of the Ordinance, he could be subject to criminal prosecution or civil penalties. On or about September 21, 1990, Runyon removed both signs.

On or about October 10, 1990, Runyon erected a 3' × 8' sign on his property, which sign brandished the same slogan as the two signs he had posted in September. Approximately two days later, he received a second "Notice of Violation" similar to the first. On October 15, 1990, Runyon removed the sign.

Runyon filed the present action on October 26, 1990, challenging the Ordinance as

Carl M. Varady, American Civ. Liberties Union of Hawaii Foundation, Honolulu, Hawaii, for plaintiff.

Ronald B. Mun, Corp. Counsel, Sandra A. Simms, Deputy Corp. Counsel, City and County of Honolulu, Honolulu, Hawaii, for defendants.

1. Runyon leases the property from the Florence L.H. Kahikian Trust.

unconstitutionally restrictive of speech in violation of the first amendment to the United States Constitution. He is requesting declaratory and injunctive relief.

Subsequently, on October 31, 1990, the parties to this suit entered into a joint stipulation in which they agreed that no further action would be taken to enforce the Ordinance against Runyon or any other party until the November 6, 1990, election had taken place.[2] Pursuant to the stipulation, Runyon then redisplayed the 3' × 8' sign, as well as a sign endorsing another candidate.

## DISCUSSION

### A. *Standard for Summary Judgment*

Rule 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

The burden of showing the absence of any genuine issue of material fact rests upon the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ To satisfy its burden, the moving party must make a clear demonstration of the absence of any genuine issue as to the existence of each material fact which, under applicable principles of substantive law, would be required to support a judgment in its favor. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir.1983). In determining whether a genuine issue of material

fact exists, the court should draw inferences from the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Perez v. Curcio*, 841 F.2d 255, 258 (9th Cir.1988).

■ If the moving party meets its burden, the non-moving party must produce significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). In order to defeat a motion for summary judgment, an adverse party "may not rest upon the mere allegations or denials of the adverse party's pleadings." Rule 56(e). Instead, the adverse party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

### B. *Runyon's Motion for Summary Judgment*

The Ordinance imposes a total ban on the posting of outdoor political campaign signs. It applies to "signs in all zoning districts and zoning precincts." Ordinance § 3.90–1. Its professed purposes are to (1) promote traffic safety; (2) protect pedestrians; (3) permit effective fire fighting; and (4) preserve the aesthetic beauty of the City. *See* Ordinance § 3.90. The Ordinance provides in pertinent part:

> It shall be unlawful to erect or maintain ... [a]ny political campaign sign, including poster, banner, writing, picture, painting, light, model, display, emblem, notice, illustration, insignia, symbol and any other advertising device, the purpose of which is to announce the candidacy of any person or persons seeking public elected office or offices, when such sign is displayed out-of-doors.

Ordinance § 3.90–2.

The parties agree that the standard to be used in evaluating the constitutionality of the Ordinance was set forth by the United States Supreme Court in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101

---

**2.** The parties expressly reserved the right to contest at a later date any issue raised in the case.

S.Ct. 2882, 69 L.Ed.2d 800 (1981). In *Metromedia*, the court held that time, place, and manner restrictions on speech are constitutionally permissible if they (1) are justified without reference to the *content* of the regulated speech, (2) serve a significant governmental interest, and (3) leave open ample alternative channels for communication of the information.[3] *Id.* at 516, 101 S.Ct. at 2897, *citing Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976).

In the present case, the defendants concede that the Ordinance is not content-neutral. City Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("Defendants' Memorandum") at 2. The defendants argue that the Ordinance is constitutionally permissible nonetheless because of the City's strong interest in "aesthetic values" and because "a total ban on political signs curtails no more speech than is necessary to accomplish the purpose of preservation of the aesthetic environment." *Id.*

In *Ross v. Goshi,* this court invalidated an ordinance almost identical to the one involved in the present case. 351 F.Supp. 949 (D.Haw.1972). The ordinance at issue in *Ross* prohibited all outdoor political campaign signs—except signs identifying the headquarters of a political candidate—placed on real property, buildings and structures in view of the general public. *Id.* at 950. The declared purpose of the ordinance was to "abate the traffic and fire hazards caused by the proliferation of such signs and to preserve the natural beauty of the County." *Id.* at 951. The ordinance allowed various types of *commercial* signs after licensing and regulation. *Id.* at 953.

The court in *Ross* held that the Maui County Ordinance violated plaintiffs' constitutional rights to freedom of speech and equal protection of the law. 351 F.Supp. at 954. In particular, the court held that the

ordinance was constitutionally infirm because "less drastic means are available for achieving the same basic purpose." *Id.* at 953.

Defendants have made no showing that political signs reasonable in size, structure, appearance and placement constitute a safety hazard or blemish on the natural beauty of Maui County different from the many types of commercial and exempt signs expressly permitted by [the ordinance].

*Id.*

Similarly, the Ninth Circuit Court of Appeals in *Baldwin v. Redwood City* upheld a district court finding that an ordinance which placed a limit on the aggregate area of all signs endorsing a particular candidate or issue and which imposed a complete ban on the posting of "temporary" signs[4] in residential areas was *unconstitutional.* 540 F.2d 1360, 1375 (9th Cir.1976), *cert. denied sub nom. Leipzig v. Baldwin,* 431 U.S. 913, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). The court first addressed the ordinance's limit on the aggregate area of political signs endorsing a single candidate or issue.

With respect to the City's argument that the ordinance was justified as a means of advancing traffic safety by decreasing the number of distractions faced by drivers, the court responded: "Considering the universe of distractions that face motorists on our city streets, temporary political posters are not sufficiently significant to justify so serious a restriction upon political expression." 540 F.2d at 1370. The court held that "[a]ny relationship between the aggregate area of temporary signs and traffic safety is far too imprecise to justify the restriction as a traffic regulation." *Id.* at 1370. The court pointed out that a less restrictive alternative would be to restrict only those signs which obstruct the vision of vehicular traffic or which might be confused with traffic signs. *Id.* at 1370 n. 24.

---

**3.** *See also Tauber v. Town of Longmeadow,* in which the district court of Massachusetts stated that "'even pure political speech ... "may be subject to reasonable time, place and manner regulations that are content-neutral, serve a significant governmental interest, and that leave

open ample alternative channels for communication of the information."'" 695 F.Supp. 1358, 1360 (D.Mass.1988) (citations omitted).

**4.** Such as election signs. *See* 540 F.2d at 1363.

Regarding the City's interest in cleanliness, the court suggested that imposition of an obligation upon owners or tenants of property to remove or alter unsafe or insecure signs would serve this end. *Id.* "If these measures are not wholly successful, the minimal burden of removing the residual litter is a price of free expression the city must bear." *Id.*

With respect to the City's interest in aesthetics, the court noted that election signs were temporary and infrequent and proposed that the City impose design restrictions "that would bar the more unsightly posters, without impairing political expression." *Id.*

The court next considered the ordinance's total ban on the posting of temporary signs, including election signs, in residential zones. The court held that "a form of free expression may not be barred entirely from an area in which exercise of the right of free speech has been traditional." 540 F.2d at 1372. The court further held that the ordinance could withstand constitutional muster only if "it is no more restrictive than necessary to further significant government interests." *Id.* The court reiterated its view that less restrictive means were available to deal with litter, ugliness, and traffic hazards. *Id.* at 1373.

Like the ordinances invalidated in *Ross* and *Baldwin,* Ordinance 86–96 prohibits the posting of *political* signs while allowing the posting of certain *commercial* signs. *See* Ordinance §§ 3.90–3 and 3.90–4. In fact, Ordinance 86–96 is *more* restrictive than the ordinance invalidated in *Baldwin* because it prohibits outdoor political signs *anywhere,* not just in residential zones. *See* Ordinance § 3.90–1.

■ In *Metromedia,* the court held that the legislature's distinction between non-commercial and commercial speech *for purposes of a time, place and manner restriction* was not rational.

The city does not explain how or why non-commercial billboards located in places where commercial billboards are permitted would be more threatening to safe driving or would detract more from the beauty of the city. Insofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages. . . .

453 U.S. at 513, 101 S.Ct. at 2895. In fact, non-commercial speech is entitled to *broader* constitutional protection than commercial speech. *National Advertising Co. v. City of Orange,* 861 F.2d 246, 248 (9th Cir.1988), *citing Metromedia,* 453 U.S. at 506–07, 520, 101 S.Ct. at 2982, 2899.

■ Based on the precedent discussed above, it is clear that Ordinance 86–96 violates the first amendment of the United States Constitution. It fails the first prong of the *Metromedia* test because, as defendants concede, the Ordinance is not content-neutral. 453 U.S. at 516, 101 S.Ct. at 2897. Second, the Ordinance is constitutionally infirm because less drastic means are available for accomplishing the Ordinance's professed purposes. "[T]here is no compelling state interest in a particular regulatory scheme when less drastic means are available for achieving the same basic purpose." *Ross,* 351 F.Supp. at 953.

Less drastic means than a *complete ban on the posting of political signs outdoors* are clearly available to promote the City's interest in traffic safety, safety of pedestrians, effective fire fighting, and aesthetic beauty. Like the defendants in *Metromedia,* the defendants in the present case have offered no explanation for their determination that *political* signs impede the afore-mentioned goals more than signs exhibiting any other type of message.

In their opposition memorandum, the defendants do not address the issue of less restrictive means. Instead, they argue that the City's interest in aesthetics is a legitimate one[5] and that the Ordinance leaves available alternative avenues of

---

5. Runyon does not dispute that aesthetics and traffic safety are legitimate interests. Plaintiff's Reply to Defendants' Memorandum in Opposi-

tion to Plaintiff's Motion for Summary Judgment at 8.

communication.[6] Defendants rely heavily on *Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). In *Vincent,* the United States Supreme Court upheld an ordinance which imposed a total prohibition against temporary signs on public property. 466 U.S. at 817, 104 S.Ct. at 2135.

There is a *critical* distinction between the ordinance upheld in *Vincent* and that being challenged in the present case: the *Vincent* ordinance was *content-neutral. Id.* at 816, 104 S.Ct. at 2135. Furthermore, the *Vincent* ordinance prohibited signs *only on public property,* whereas Ordinance 86–96 purports to prohibit outdoor political signs *on public and private property.* In fact, the signs posted by Runyon in the present case were posted on his *private residential property.*

■ In sum, this court finds that Ordinance 86–96 is an unconstitutional restriction on the freedom of speech. It is *not* content-neutral,[7] and there are less drastic means available for accomplishing the legislature's purposes. For these reasons, the court hereby GRANTS Runyon's motion for summary judgment.[8]

### C. *Runyon's Request for Attorney's Fees*

Runyon requests an award of attorney's fees pursuant to 42 U.S.C. § 1988.[9] That statute provides that the court, in its discretion, may award attorney's fees to the prevailing party in an action brought under 42 U.S.C. § 1983. In bringing the present case, Runyon alleged violations of the first and fourteenth amendments as well as of 42 U.S.C. § 1983.

Title 42 U.S.C. § 1983 provides that:

**6.** Namely, "sign waving." Defendants' Memorandum at 5–6.

**7.** *Cf. Gilleo v. City of Ladue,* No. 90–2396–C–7, 1991 WL 24614 (E.D.Mo. January 7, 1991) (ordinance regulating signs lacked content-neutrality and therefore was unconstitutional on its face).

**8.** Runyon argues in his memorandum that the present case is ripe and that it is not moot. Defendants did not raise either of these issues in their opposition memorandum, however. The court finds that the present case is clearly ripe because Runyon has received two "Notices of

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Because this court has found that Ordinance 86–96 violates Runyon's first and fourteenth amendment rights, it follows that the defendants are also liable to Runyon under 42 U.S.C. § 1983.

■ Having determined that Runyon is the prevailing party in an action brought under 42 U.S.C. § 1983, this court finds that an award of reasonable attorney's fees is appropriate. Title 42 U.S.C. § 1988 is remedial in nature and should be broadly interpreted. *Williams v. City of Fairburn, Ga.,* 702 F.2d 973, 976 (11th Cir. 1983), *citing Northcross v. Board of Ed. of Memphis City Schools,* 611 F.2d 624, 633 (6th Cir.1979) *and Johnson v. Georgia Highway Exp., Inc.,* 488 F.2d 714, 716 (5th Cir.1974). "The basis for allowing such broad interpretation is to facilitate private enforcement and to allow the attorney to explore and develop every aspect of a case." *Williams,* 702 F.2d at 976.

■ The prevailing party in a § 1983 action should ordinarily recovery attorney's fees absent special circumstances which would render the award unjust. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Newman v. Piggie*

Violation" from the City. The court also finds that although the November 6, 1990, election has already taken place, the present case falls within the exception to the mootness doctrine for cases "capable of repetition, yet evading review." The Supreme Court in *Moore v. Ogilvie* stated that political elections fall within this category of cases. 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969).

**9.** The defendants do not address the issue of attorney's fees in their memorandum.

*Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). A finding that the defendants acted in good faith alone does not constitute a "special circumstance" which would render an award of attorney's fees unjust. *American Booksellers Ass'n, Inc. v. Virginia,* 802 F.2d 691, 697 (4th Cir.1986).

 If a plaintiff successfully challenges the constitutionality of a statute under the first amendment, he is entitled to attorney's fees. *American Booksellers,* 802 F.2d at 697. It is not unjust that the taxpayers will have to bear the cost of the award because they, too, benefit from the litigation in that they can continue to enjoy unfettered freedom of expression. *Id.* at 697.

In setting attorney's fees in civil rights cases, the fact that the prevailing party was represented by a public service firm or association funded by public funds is irrelevant. *Watkins v. Mobile Housing Bd.,* 632 F.2d 565 (5th Cir.1980). Even if civil rights suits are brought by legal service attorneys receiving less in attorney fees than private practitioners, the incentive to the defendants to obey the law is reduced if diminished fee awards are assessed. *Alexander v. Hill,* 553 F.Supp. 1263 (W.D.N.C.1983).

"Reasonable fees" in a federal civil rights action are to be calculated according to prevailing market rates in the relevant community, regardless of whether the plaintiff is represented by private or nonprofit counsel. *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). The statute assumes, however, a paying relationship between an attorney and a client. *Kay v. Ehrler,* 900 F.2d 967, 971 (6th Cir.1990), *cert. granted,* — U.S. ——, 111 S.Ct. 38, 112 L.Ed.2d 15 (1990), *citing Falcone v. IRS,* 714 F.2d 646, 648 (6th Cir.1983), *cert. denied,* 466 U.S. 908, 104 S.Ct. 1689, 80 L.Ed.2d 162 (1984).

In the present case, the court finds that no "special circumstances" exist which would render an award of attorney's fees unjust. Accordingly, the court hereby GRANTS Runyon's request for reasonable attorney's fees and remands this matter to the magistrate judge for a determination as to the precise amount of attorney's fees to be awarded.

## CONCLUSION

For the foregoing reasons, the court hereby GRANTS Runyon's motion for summary judgment and for attorney's fees.

IT IS SO ORDERED.