965 P.2d 162

**Casey RINGOR, Petitioner–Appellant,**

v.

**STATE of Hawai'i, Respondent–Appellee.**

**No. 20588.**

Intermediate Court of Appeals of Hawai'i.

Sept. 17, 1998.

As Amended Dec. 3, 1998.

Theodore Y.H. Chinn, Deputy Public Defender, on the briefs, for petitioner-appellant.

Michael K. Soong, Deputy Prosecuting Attorney, County of Kauai, on the brief, for respondent-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

WATANABE, Judge.

The sole question presented by this appeal is whether the parole of Petitioner–Appellant Casey Ringor (Petitioner) was improperly revoked by the Hawai'i Paroling Authority (the HPA) without a hearing, following his conviction and sentence to imprisonment for a federal felony offense committed in the State of Hawai'i (the State) while he was on parole. The Circuit Court of the Fifth Circuit (the circuit court) answered the foregoing question in the negative and, accordingly, denied Petitioner's Hawai'i Rules of Penal Procedure (HRPP) Rule 40 petition for an order releasing him from custody.

We vacate the circuit court's "Findings of Fact; Conclusions of Law; Order Denying Petition for Post–Conviction Relief" filed on February 28, 1997 (February 28, 1997 Order) and remand for proceedings consistent with this opinion.

## BACKGROUND

On September 11, 1980, following his pleas of guilty to the offenses of Assault in the First Degree and Robbery in the First Degree, Petitioner was sentenced by the circuit court to ten years of imprisonment on the assault charge and twenty years of imprisonment on the robbery charge, both terms to run concurrently. Sometime before December 27, 1992, Petitioner was paroled.

It is apparently uncontested that on January 26, 1993, while still on parole, Petitioner was charged in the United States District Court for the District of Hawai'i with committing the federal offense of Possession with Intent to Distribute Cocaine, a Schedule II narcotic controlled substance, in violation of 21 United States Code (U.S.C.) § 841(a)(1)[1] and (b)(1)(B)[2] and 18 U.S.C. § 2.[3] On February 2, 1993, Petitioner pleaded guilty to said charge, and on August 11, 1993, Petitioner was sentenced to serve a three-year term of imprisonment, followed by a five-year period of supervised release.

On October 19, 1994, the Chair of the HPA sent Petitioner a memorandum which stated, in substantive part, as follows:

> Your case was brought to the attention of the [HPA] on September 28, 1994, at which time, the [HPA] decided to revoke your parole for the balance of your maximum sentence under Cr. No. 2080 based upon your conviction of a felony offense while on parole and sentenced [sic] to imprisonment—[Hawai'i Revised Statutes (HRS)] Section 353–66, 1992 Supplement.

On November 25, 1996, Petitioner filed an HRPP Rule 40 petition challenging the HPA's decision. The circuit court denied the petition and issued its February 28, 1997 Order. Of particular relevance to this appeal are the following Conclusions of Law entered by the circuit court:

> 1. Since [P]etitioner was convicted in the State of a crime committed while on parole and sentenced to imprisonment, he violated the statutory provisions of Section 353–66 [HRS].
>
> 2. In reviewing [HRS §] 353–66, it makes no difference whether [P]etitioner was convicted by a state court or a federal court of the state in which the crime was committed.
>
> 3. Pursuant to [§] 353–66 [HRS], the [HPA] was within its authority to revoke [P]etitioner's parole without a hearing.
>
> 4. Petitioner's request to be released from custody for parole revocation is denied based on Section 353–66 [HRS]. Petitioner was not denied due process of law.

### DISCUSSION

Petitioner contends that the circuit court erred in denying his petition because: (1) HRS § 706–670(7) (1993), which mandates that the HPA hold a hearing before parole can be revoked, has by implication, repealed HRS § 353–66 (1993), which provides that no hearing is required for the HPA to revoke a parolee's parole "when a person is convicted in the State of a crime committed while on parole and is sentenced to imprisonment"; (2) the no-hearing exception set forth in HRS § 353–66 is not applicable to this case since Petitioner was convicted and sentenced for a federal offense; and (3) parole revocation without a hearing violates the due process clauses of the federal and state constitutions.

For the reasons set forth below, we find no merit to Petitioner's first two contentions. However, we agree with Petitioner's third contention.

A. *Whether the HPA Was Statutorily Required to Hold a Hearing Before Revoking Petitioner's Parole.*

■ HRS § 353–66 (1993), which is part of part II, entitled "Paroles and Pardons," of HRS chapter 353, states, in relevant part, as follows:

**Terms and conditions of parole; suspension and revocation.** Every parole

---

1.  21 United States Code (U.S.C.) § 841(a)(1) provides, in relevant part:
    **Prohibited acts A**
    **(a) Unlawful acts.** Except as authorized by this title, it shall be unlawful for any person knowingly or intentionally—
    (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]
    * * *

2.  21 U.S.C. § 841(b)(1)(B) sets forth the penalties for violations of 21 U.S.C. § 841(a)(1).

3.  18 U.S.C. § 2 states:
    **Principals**
    (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
    (b) Whoever willfully causes an act to be done which if directly performed by him [or her] or another would be an offense against the United States, is punishable as a principal.

granted under this part to any prisoner shall be subject to the express condition, to be set forth in the official written notification of parole to the prisoner, but to be binding upon the prisoner in any event, that all or any portion of the prisoner's credits earned or to be earned may be forfeited by order of the [HPA] in the event that the prisoner breaks the prisoner's parole or violates any law of the State or rule of the [HPA] or any of the terms or conditions of the prisoner's parole. *No parole shall be revoked and no credits forfeited without cause,* which cause must be stated in the order revoking the parole, or forfeiting the credits after notice to the paroled prisoner of the paroled prisoner's alleged offense *and an opportunity to be heard; provided that when a person is convicted in the State of a crime committed while on parole and is sentenced to imprisonment, ..., no hearing shall be required to revoke the parolee's parole[.]* (Emphases added.)

After HRS § 353–66 had been codified into law for a number of years, HRS § 706–670(7) (1993) was enacted in 1972 as part of the Hawai'i Penal Code. HRS § 706–670(7) provides:

> Revocation hearing. *When a parolee has been recommitted, the [HPA] shall hold a hearing within sixty days after the parolee's return to determine whether parole should be revoked.* The parolee shall have reasonable notice of the grounds alleged for revocation of the parolee's parole. The institutional parole staff shall render reasonable aid to the parolee in preparation for the hearing. In addition, the parolee shall have, with respect to the revocation hearing, those rights set forth in subsection (3)(a), (3)(b), (3)(c), and (3)(d).[4] A record of the hearing shall be made and preserved as provided in subsection (4).[5]

(Emphasis and footnotes added.) According to the Commentary on subsection (7),[6] the subsection "provides for a hearing on revocation of parole which affords the parolee fair notice, representation, and assistance, much in the same way as that provided in the case of hearings on the minimum term and initial parole."

4. Hawai'i Revised Statutes (HRS) § 706–670(3) (1993) provides:

> (3) Prisoner's plan and participation. Each prisoner shall be given reasonable notice of the prisoner's parole hearing and shall prepare a parole plan, setting forth the manner of life the prisoner intends to lead if released on parole, including specific information as to where and with whom the prisoner will reside and what occupation or employment the prisoner will follow. The prisoner shall be paroled in the county where the prisoner had a permanent residence or occupation or employment prior to the prisoner's incarceration, unless the prisoner will reside in a county in which the population exceeds eight-hundred thousand persons; or the prisoner will be released for immediate departure from the State. The institutional parole staff shall render reasonable aid to the prisoner in the preparation of the prisoner's plan and in securing information for submission to the [Hawai'i Paroling Authority (HPA)]. In addition, the prisoner shall:
> (a) Be permitted to consult with any persons whose assistance the prisoner reasonably desires, including the prisoner's own legal counsel, in preparing for a hearing before the authority;
> (b) Be permitted to be represented and assisted by counsel at the hearing;
> (c) Have counsel appointed to represent and assist the prisoner if the prisoner so requests and cannot afford to retain counsel; and
> (d) Be informed of the prisoner's rights as set forth in this subsection.

5. When Petitioner filed his Hawai'i Rules of Penal Procedure Rule 40 petition on November 25, 1996, HRS § 706–670(4) (Supp.1996), provided, in relevant part:

> (4) ... The [HPA] shall render its decision regarding a prisoner's release on parole within a reasonable time after the parole hearing. A grant of parole shall not be subject to acceptance by the prisoner. If the [HPA] denies parole after the hearing, it shall state its reasons in writing. A verbatim stenographic or mechanical record of the parole hearing shall be made and preserved in transcribed or untranscribed form. The [HPA], in its discretion, may order a reconsideration or rehearing of the case at any time and shall provide reasonable notice of the reconsideration or rehearing to the prosecuting attorney. If parole is granted by the [HPA], the [HPA] shall set the initial minimum length of the parole term.

6. Subsection (7) of HRS § 706–670 (1993) was formerly numbered as subsection (6). *See* HRS § 706–670 (1976); Commentary on HRS § 706–670 (1993).

The HPA relied on HRS § 353–66 in revoking Petitioner's parole without a hearing. Petitioner argues that in light of the principles of statutory construction articulated by the Hawai'i Supreme Court in *Fasi v. City and County of Honolulu*,[7] 50 Haw. 277, 285, 439 P.2d 206, 211 (1968), the HPA should not have applied HRS § 353–66 to revoke Petitioner's parole without a hearing. In *Fasi*, the supreme court stated:

[W]hen the later act is exclusive, that is, when it covers the whole subject to which it relates, and is manifestly designed by the legislature to embrace the entire law on the subject, it will be held to repeal by implication all prior statutes on that matter whether they are general or special, even though they are not repugnant, unless it is expressly provided that prior special acts shall not be affected.

*Id.* at 285, 439 P.2d at 211 (internal quotation marks omitted).

Petitioner claims that because (1) the no-hearing proviso in HRS § 353–66 was already in existence at the time the legislature passed the Hawai'i Penal Code in 1972, and (2) the legislature, in adopting the Hawai'i Penal Code, expressly provided in HRS § 706–600 (1993) that "[n]o sentence shall be imposed otherwise than in accordance with this chapter[,]" the hearing requirement set forth in HRS § 706–670 should be regarded as exclusive, embracing the entire law on the subject, and repealing HRS § 353–66 by implication. We disagree.

The Hawai'i Supreme Court has instructed that in interpreting general statutes that may appear to conflict with specific statutes relating to the same subject matter, three rules of statutory construction are especially germane:

First, legislative enactments are presumptively valid and should be interpreted in such a manner as to give them effect. Second, laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to

---

**7.** In *Fasi v. City and County of Honolulu*, 50 Haw. 277, 439 P.2d 206 (1968), the Hawai'i Supreme Court was called upon to determine the validity of salary increases for the chairperson and members of the City and County of Honolulu (the City) Council (Council), contained in an ordinance passed by the Council on October 5, 1965, approved by the mayor the following day, and made effective on January 1, 1966. The *Fasi* plaintiffs contended that the salary increases violated section 3–106 of the City Charter, which provided that no council member salary increases "shall be effective during the term in which an increase is enacted." *Id.* at 278, 439 P.2d at 207. Disagreeing with the plaintiffs, the supreme court initially held that under the Hawai'i Constitution, the City's Charter

is no more than a statutory charter. The constitution merely empowers each political subdivision to frame and adopt a charter "within such limits and under such procedures as may be prescribed by law," thus leaving the scope of local self-government to legislative control.

*Id.* at 283, 439 P.2d at 210. The supreme court added that, subject to the limitation contained in article VII, section 1 of the constitution that "[e]ach political subdivision shall have and exercise such powers as shall be conferred under general laws[,]" the legislature "is free to enact any legislation affecting the powers of political subdivisions." *Id.* at 284, 439 P.2d at 210.

The supreme court then considered whether section 3–106 of the City Charter had been amended by the legislature's enactment of Act 223, Hawai'i Session Laws 1965, which added the following provision to the Revised Laws of Hawai'i (RLH) 1955:

Sec. 138–. Compensation of certain county officials. Any law to the contrary notwithstanding, each county including the City and County of Honolulu by ordinance shall fix the salaries for its officials whose salaries are presently specifically established by statute or ordinance.

Concluding affirmatively, the supreme court noted that the charter and statutory provisions were clearly in conflict because unlike the charter, the statute imposed no limitation on the effective date of salary increases. *Id.* at 285, 439 P.2d at 211. The supreme court also observed that Act 223 contained "three items which manifest the legislative intent to make the [Act's salary increase provision] the sole authority under which counties, including the City ..., may fix the salaries of their officials whose salaries were previously established by statute ordinance":

First, it made [the salary increase provision of Act 223] a part of [RLH] 1955, Ch. 138. That is a chapter which contains "General Provisions Common to All Counties." Second, it prefaced the grant of authority in section 10 with the clause, "Any law to the contrary notwithstanding." Section 3–106 of the charter is a "law to the contrary," .... Third, it provided in section 18: "All laws and parts of laws heretofore enacted which are in conflict with the provisions of this Act are hereby amended to conform herewith."

*Id.* at 284, 439 P.2d at 210.

explain what is doubtful in another. Third, where there is a plainly irreconcilable conflict between a general and a specific statute concerning the same subject matter, the specific will be favored. However, where the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored.

*Richardson v. City and County of Honolulu,* 76 Hawai'i 46, 54–55, 868 P.2d 1193, 1201–02 (1994) (internal quotation marks, brackets, and citations omitted).

Applying the foregoing considerations, it is unquestionable in this case that HRS §§ 706–670(7) and 353–66 are *in pari materia,* since both statutes relate to the same subject matter, i.e., revocation of a parolee's parole. However, the statutes overlap in their application, are not plainly irreconcilable, and can both be given effect.

HRS § 353–66 applies generally to any situation where a parolee has "[broken] the [parolee's] parole," or "violate[d] any law of the State or rule of the [HPA] or any of the terms or conditions of the prisoner's parole." In such instances, the statute requires that before a parolee's parole can be suspended or revoked, the parolee must (1) be notified of the offenses that he or she allegedly committed while on parole, and (2) be afforded the opportunity to be heard in his or her defense as to those allegations. However, the statute specifically exempts the HPA from the hearing requirement when a parolee has already been "convicted in the State of a crime committed while on parole and is sentenced to imprisonment[.]"

HRS § 706–670(7), on the other hand, sets forth the general rule governing situations where a parolee is *recommitted* to a state correctional facility, presumably because the parolee has been arrested while on parole and is being detained pending a hearing,[8]

trial, or the posting of bail. In such situations, HRS § 706–670(7) mandates that the HPA hold a hearing within sixty days after the parolee has been recommitted, in order to determine whether the parolee's parole should be revoked.

When the foregoing statutes are construed together, the general rule, as set forth in HRS § 353–66, is that the HPA is required to hold a hearing in order to revoke a parolee's parole for a "[break in] the [parolee's] parole" or violation of "any law of the State or rule of [the HPA] or any of the terms or conditions of the [parolee's] parole." Where a parolee is recommitted to a state correctional facility, however, HRS § 706–670(7) requires that the revocation hearing be held within sixty days of the parolee's recommitment. Additionally, pursuant to HRS § 353–66, no hearing is required to revoke the parole of a parolee who has been sentenced to imprisonment after being convicted in the State of a crime committed while on parole. Since the statutes can all be given effect without conflict, we conclude that HRS § 706–670(7) is not the "exclusive" law governing parole revocations, does not embrace the entire law on the subject, and does not repeal HRS § 353–66 by implication. Moreover, HRS § 706–670(7) does not appear to even apply to the facts of this case since Petitioner, having been convicted for a federal offense, was never "recommitted" to a state correctional facility while on parole.

B. *Whether the No–Hearing Requirement Set Forth in HRS § 353–66 Applies Only to Convictions for State Offenses.*

Petitioner submits that conviction of a federal offense in the State is not the type of conviction to which the no-hearing requirement set forth in HRS § 353–66 applies. We disagree.

---

8. HRS § 353–65 (1993) provides, in part, that the HPA

> may establish rules and regulations, with the approval of the governor and the director of public safety not inconsistent with this part, under which any prisoner may be paroled but shall remain, while on parole, in the legal custody and under the control of the [HPA], and be subject, at any time until the expiration

of the term for which the prisoner was sentenced, to be taken back within the enclosure of the prison.... The power to retake and reimprison a paroled prisoner is conferred upon the administrative secretary, who may issue a warrant authorizing all of the officers named therein to arrest and return to actual custody any paroled prisoner....

■ It is a general rule that "[w]here no ambiguity exists in the language of the statute, the statute must be given effect according to its plain and obvious meaning." *State v. Palpallatoc,* 71 Haw. 178, 180, 787 P.2d 214, 215 (1990). HRS § 353–66 provides that no hearing is required "when a person is convicted in the State of a crime committed while on parole and is sentenced to imprisonment[.]" On its face, the statute does not limit its application to persons who are convicted and thereafter sentenced to imprisonment only in the state courts of Hawai'i. The only limitation is that the person be convicted "in the State" of a crime committed while on parole and be sentenced to imprisonment. Therefore, we cannot agree with Petitioner that the no-hearing requirement of HRS § 353–66 applies only to convictions of violations of state law.

C. *Whether the Revocation of Petitioner's Parole Without a Hearing Violated the Due Process Clauses of the Federal and State Constitutions.*

■ Relying on the holding of the United States Supreme Court in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), Petitioner contends that his due process rights under the federal and state constitutions were violated when the HPA revoked his parole without affording him a hearing. We agree.

### 1. *Morrissey v. Brewer*

*Morrissey* involved two parolees who had their paroles revoked by the Iowa Board of Parole without a hearing, following their arrests for violating the terms and conditions of their paroles.[9] Both filed habeas corpus petitions, claiming that their parole revocations without a hearing constituted a deprivation of their constitutional due process rights. The Supreme Court agreed that the parolees were entitled to some form of informal due process before their paroles could be terminated:

> [T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the parolee and often on others.... [T]he [parolee's] liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.

*Id.* 408 U.S. at 482, 92 S.Ct. at 2600. The Supreme Court added, however, that "the full panoply of rights due a defendant" in a criminal prosecution is not required to revoke a parole. *Id.* 408 U.S. at 480, 92 S.Ct. at 2599–2600. It is sufficient that an "informal hearing" be held "to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Id.* 408 U.S. at 484, 92 S.Ct. at 2602. Furthermore, an informal hearing is required at two stages of the parole revocation process. *Id.* 408 U.S. at 484–85, 92 S.Ct. at 2601–02. "The first stage occurs when the parolee is arrested and detained, usually at the direction of his [or her] parole officer. The second occurs when parole is formally revoked." *Id.* 408 U.S. at 485, 92 S.Ct. at 2602.

With respect to the first (preliminary hearing) stage, the Court indicated:

> [D]ue process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available. Such an inquiry should be seen as in the nature of a "preliminary hearing" to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that

---

9. In *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), two parolees had their paroles revoked without a hearing after they were arrested for violating the terms and conditions of their paroles. The first parolee was arrested for buying a car under an assumed name and operating it without permission, giving false statements to police regarding his address and insurance company after a minor accident, obtaining credit under an assumed name, and failing to report his place of residence to his parole officer. *Id.* 408 U.S. at 473, 92 S.Ct. at 2596. The second parolee was arrested for violating the territorial restrictions of his parole without consent, obtaining a driver's license under an assumed name, operating a motor vehicle without permission, and failing to keep himself gainfully employed. *Id.*

would constitute a violation of parole conditions.

*Id.* 408 U.S. at 485, 92 S.Ct. at 2602 (citation omitted). The Court also instructed that [w]ith respect to the preliminary hearing ..., the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged.

*Id.* 408 U.S. at 486–87, 92 S.Ct. at 2602–03. Moreover, at the preliminary hearing, the parolee may appear and speak in his or her behalf, present relevant information, and absent security reasons, question adverse informants, and the hearing officer "shall have the duty of making a summary, or digest, of what occurs at the hearing in terms of the responses of the parolee and the substance of the documents or evidence given in support of parole revocation and of the parolee's position." *Id.* 408 U.S. at 487, 92 S.Ct. at 2603. The hearing officer shall then determine, based on the information presented, "whether there is probable cause to hold the parolee for the final decision of the parole board on revocation" and shall "state the reasons for his [or her] determination and indicate the evidence ... relied on[.]" *Id.*

As to the second (final revocation) stage, the Supreme Court ruled as follows:

There must also be an opportunity for a hearing, if it is desired by the parolee, prior to the final decision on revocation by the parole authority. This hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he [or she] can, that he [or she] did not violate the conditions, or, if he [or she] did, that circumstances in mitigation suggest that the violation does not warrant revocation. The revocation hearing must be tendered within a reasonable time after the parolee is taken into custody. A lapse of two months ... would not appear to be unreasonable.

*Id.* 408 U.S. at 487–88, 92 S.Ct. at 2603–04. At this stage, the Court held, the "minimum requirements of due process" should include:

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him [or her]; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* 408 U.S. at 489, 92 S.Ct. at 2604. The Court emphasized, however, that the second stage of the parole revocation process is "a narrow inquiry," and "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.*

Unlike in *Morrissey,* Petitioner was not arrested for committing a parole violation. He was arrested and charged with committing a federal crime, and he was ultimately convicted in the State on said charge and sentenced to a term of imprisonment. The issue presented by this appeal then, is whether the parole revocation hearing requirements imposed by *Morrissey* are applicable to the instant situation.

### 2. *The Preliminary Hearing Requirement*

■ We conclude, based on *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), that the preliminary hearing requirement of *Morrissey* was not required to revoke Petitioner's parole. In *Moody,* the United States Supreme Court held that

where petitioner has already been convicted of and incarcerated on a subsequent offense, there is no need for the preliminary hearing which *Morrissey* requires upon arrest for a parole violation. This is so both because the subsequent conviction obviously gives the parole authority "prob-

able cause or reasonable ground to believe that the ... parolee has committed acts that would constitute a violation of parole conditions," and because issuance of the [detainer] warrant does not immediately deprive the parolee of liberty.

*Id.* 429 U.S. at 86 n. 7, 97 S.Ct. 274 (citations omitted).

In this case, Petitioner's parole was revoked after Petitioner was sentenced to prison for a federal criminal conviction. Because Petitioner lost his liberty as a result of his conviction and not his parole revocation, and because his conviction provided the HPA with probable cause to believe that Petitioner had violated the terms and conditions of his parole, Petitioner was not entitled to a *Morrissey* preliminary hearing.

### 3. *The Final Revocation Hearing Requirement*

A number of courts have held, based on *Morrissey*, that a violation of due process occurs when a parolee's parole is automatically revoked without a final revocation hearing, following the parolee's conviction of a felony offense. *See, e.g., Moss v. Patterson*, 555 F.2d 137, 138 (6th Cir.1977) (reasoning that under *Morrissey*, "[t]he parolee must have an opportunity to be heard and to show, if he [or she] can, that he [or she] did not violate the conditions [of his or her parole], or, if he [or she] did, that circumstances in mitigation suggest that the violation does not warrant revocation"); *Heinz v. McNutt*, 582 F.2d 1190, 1194 (9th Cir.1978) (holding that a Washington statute was "an unconstitutional denial of due process insofar as it permits automatic revocation of parole without a final *Morrissey* hearing for felons who are incarcerated as a result of their convictions"); *In re Akridge*, 90 Wash.2d 350, 581 P.2d 1050, 1052 (1978) (holding that *"Morrissey* requires that the parolee have an opportunity

to explain why a subsequent conviction should not result in parole revocation").

The foregoing cases, however, were all decided before the United States Supreme Court's decision in *Black v. Romano*, 471 U.S. 606, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985). In *Black*, the United States Supreme Court expressly noted that its decision in *Morrissey* did not address the issue of whether automatic revocation of parole for a parolee's violation of certain conditions of parole would implicate due process concerns:

> Neither *Gagnon* [*v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) ] [10] nor *Morrissey* considered a revocation proceeding in which the factfinder was required by law to order incarceration upon finding that the defendant had violated a condition of probation or parole. Instead, those cases involved administrative proceedings in which revocation was at the discretion of the relevant decisionmaker. Thus, *the Court's discussion of the importance of the informed exercise of discretion did not amount to a holding that the factfinder in a revocation proceeding must, as a matter of due process, be granted discretion to continue probation or parole. Where such discretion exists, however, the parolee or probationer is entitled to an opportunity to show not only that he did not violate the conditions, but also that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition.*

*Id.* 471 U.S. at 612, 105 S.Ct. at 2258 (citations omitted, emphasis added).

Following *Black*, courts which have addressed the identical issue presented by this case have unanimously concluded that a parolee is not entitled to a final revocation hearing if his or her parole is *required* to be revoked by the factfinder upon a determination that the parolee has been convicted of a criminal offense while on parole.

---

**10.** In *Gagnon v. Scarpelli*, 411 U.S. 778, 791, 93 S.Ct. 1756, 1764, 36 L.Ed.2d 656 (1973), the United States Supreme Court concluded that the

minimum due process procedures outlined in *Morrissey* for parole revocation should also apply to probation proceedings.

238

In *Pickens v. Butler*, 814 F.2d 237 (5th Cir.1987), for example, the Fifth Circuit Court of Appeals construed *Morrissey* and *Black* as requiring a parole revocation hearing "only where the factfinder has discretion to continue parole[.]" *Id.* at 239. The court explained that

it is only where the factfinder has discretion to continue parole that the parolee is entitled to show an excuse for the violation or that revocation is not appropriate.

Thus, if the Board [of Parole] in this case was required by Louisiana law to revoke [the parolee's] parole following his California felony conviction and had no discretion to continue parole, the Board was not required to give him a final revocation hearing.

*Id.*

Similarly, in *Alveras v. Neubert*, 727 F.Supp. 852 (S.D.N.Y.1990), the United States District Court for the Southern District of New York held that a prisoner was not constitutionally entitled to a final parole revocation hearing upon his conviction of a felony while on conditional release. *Id.* at 853–54. Responding to the prisoner's contention that under *Morrissey*, he was entitled to such a hearing before his parole could be revoked, the court stated:

Those [*Morrissey*] requirements were set forth in the context of parolees suffering revocation based on charges made by their parole officers, and theretofore not established as true by any court or administrative body. In *Black v. Romano*, the Court stated that *Morrissey* did not consider the hearing requirements of "a revocation proceeding in which the factfinder was required by law to order incarceration upon finding that the defendant had violated a condition of ... parole." "Thus, the Court's discussion of the importance of the informed exercise of discretion did not amount to a holding that the factfinder in a revocation proceeding must, as a matter of due process, be granted discretion to continue ... parole."

In this case, the requirements of establishing probable cause and then an actual violation of parole have been satisfied by petitioner's convictions. The requirement

that petitioner have an opportunity to show "that circumstances in mitigation suggest that the violation does not warrant revocation", *Morrissey*, has been made unnecessary by the New York State Legislature's determination that revocation should be automatic when the parolee is convicted of a felony while on conditional release.

There is nothing constitutionally improper in the Legislature's determination. "The conviction of another crime ... is adequate, in and of itself, to support a revocation, and, in such cases, a new inquiry is hardly necessary."

*Id.* at 853 (citations omitted).

In *United States v. Cornog*, 945 F.2d 1504 (11th Cir.1991), the Eleventh Circuit Court of Appeals construed *Black* as creating an exception to the final revocation hearing requirement imposed by *Morrissey*:

There is, however, one situation in which the relevant facts are uncontested and there is no possibility of mitigation: when the parole board *must* revoke parole upon finding that the parolee has violated one of its conditions. In this instance, a final hearing is unnecessary.... Thus, *only when the factfinder has discretion to continue parole is the parolee entitled to an opportunity to present mitigating factors to the court.*

*Id.* at 1512 (citations omitted, emphasis added).

We agree with the post-*Black* decisions that a parolee is not entitled to a final parole revocation hearing if his or her parole is *required* to be revoked upon conviction and imprisonment while on parole. Where automatic parole revocation is required, it would be futile to hold a final revocation hearing on mitigating circumstances since the parolee would not be able to relitigate the intervening criminal convictions in a parole revocation hearing. The dispositive question before us, then, is whether the HPA was required to revoke Petitioner's parole upon his conviction and sentence to imprisonment.

### 4. *The Nature of the HPA's Discretion in Parole Revocation Cases*

As noted earlier, the HPA relied on HRS § 353–66 in summarily revoking Petitioner's

parole without a hearing. While HRS § 353–66 provides procedurally that "no hearing shall be required to revoke the parolee's parole" when the parolee "is convicted in the State of a crime committed while on parole and is sentenced to imprisonment," it does not literally mandate that a parolee's parole be revoked upon the parolee's conviction and sentence to imprisonment. Moreover, we are unaware of any statute that mandates the HPA to revoke the parole of a parolee who has been convicted and sentenced to imprisonment for a crime committed while on parole. This is in sharp contrast to the statutes governing probation, which expressly require that a probation sentence be revoked when a probationer is convicted of a felony. HRS § 706–625 (1993).[11]

In *Cornog,* the Eleventh Circuit Court of Appeals was called upon to determine whether a Georgia law [12] similar to HRS § 353–66 vested the parole board with "any discretion in revoking parole when the parolee is convicted of a crime." 945 F.2d at 1513. The court held that although a final parole revocation hearing was not required under Georgia law when a parolee was convicted of a new crime, "[t]his did not mean ... that parole *automatically* was revoked when the parolee was convicted of new crime." *Id.* at

1513 (emphasis in original). The court noted that in *Balkcom v. Jackson,* 219 Ga. 59, 131 S.E.2d 551, 552 (1963), the Georgia Supreme Court had ruled that in order to revoke parole, the parole board must enter an order, and if the order does not issue, then the parolee still is considered to be on parole. *Id.* The court added that "[a]lthough *Balkcom* does not tell us whether the parole board had discretion never to enter an order, it is apparent that the parole board was able, at the very least, to determine *when* the [parole revocation] order should issue." *Id.* (emphasis in original). Because the parole board had discretion to determine the timing of the issuance of a parole revocation order, the court held that the parolee "should have had the opportunity to petition the board, in a final revocation hearing, to inform its decision." *Id.*

Our review of the Hawai'i statutes governing parole reveals that no present requirement exists that the parole of a parolee be automatically revoked upon the parolee's conviction and sentence to imprisonment for a crime committed while on parole. Indeed, HRS § 353–62 (1993), which sets forth the duties and responsibilities of the HPA, appears to vest the HPA with discretion to

---

**11.** HRS § 706–624 (1993) sets forth the mandatory and discretionary conditions which a defendant sentenced to probation must comply with as a condition of a sentence of probation. One of the mandatory conditions is that "the defendant not commit another federal or state crime during the term of probation[.]" HRS § 706–624(1)(a). Pursuant to HRS § 706–625(c) (1993),

> [t]he court shall revoke probation if the defendant has inexcusably failed to comply with a substantial requirement imposed as a condition of the order or *has been convicted of a felony.* The court may revoke the suspension of sentence or probation if the defendant has been convicted of another crime other than a felony.

(Emphases added.)

Although HRS § 706–670(2) (1993) provides that the HPA, "as a condition of parole, may impose reasonable conditions on the prisoner as provided under [HRS] section 706–624[,]" there appears to be no statute comparable to HRS § 706–625(c) which *mandates* that the HPA revoke the parole of a defendant who has been convicted of a felony.

**12.** The Georgia law in question provided:

> As soon as practicable after the arrest of a person charged with the violation of the terms and conditions of his [or her] parole ..., such parolee ... shall appear before the Parole Board in person and a hearing shall be had at which the State of Georgia and parolee ... may introduce such evidence as they may deem necessary and pertinent to the charge of parole violation.... Within a reasonable time thereafter the Board shall make finding upon such charge of parole violation ... and shall enter an order thereon rescinding said parole ... and returning such person to serve the sentence theretofore imposed upon him [or her], with benefit of computing the time so served on parole ... as part of such person's sentence, or reinstating such parole ..., or shall enter such other order as it may deem proper: *Provided, however, when a parolee ... has been convicted of any crime, whether a felony or a mideameanor [sic], or has entered a plea of guilty thereto, in a court of record, his [or her] parole ... may be revoked without a hearing before the State Board of Pardons and Parole.*

*United States v. Cornog,* 945 F.2d 1504, 1513 n. 17 (11th Cir.1991) (brackets omitted; emphasis added).

revoke parole. HRS § 353–62 provides, in relevant part:

> (a) In addition to any other responsibility or duty prescribed by law for the [HPA], the [HPA] shall:
>
> \* \* \*
>
> (6) Revoke or suspend parole and provide for the authorization of return to a correctional institution for any individual who violates parole or any condition of parole *when, in the opinion of the [HPA], the violation presents a risk to community safety or a significant deviation from any condition of parole[.]*

(Emphasis added.) The permissive language in HRS § 353–66 that "all or any portion of the prisoner's credits earned or to be earned *may* be forfeited by order of the [HPA] in the event that the prisoner breaks the prisoner's parole or violates any law of the State or rule of the [HPA] or any of the terms or conditions of the prisoner's parole" also indicates that the HPA's parole revocation authority is discretionary. Because the HPA appears to have discretion as to whether to revoke the parole of a parolee who has been convicted and sentenced while on parole, we conclude that the HPA was not authorized to summarily revoke Petitioner's parole without a final revocation hearing.

## CONCLUSION

Because the HPA was not mandated to revoke Petitioner's parole upon his conviction and sentence to imprisonment for a crime committed while on parole, we conclude that the HPA should have provided Petitioner with a final revocation hearing before revoking his parole.[13] Accordingly, we vacate the circuit court's February 28, 1997 Order and remand with instructions that the circuit court refer this matter to the HPA for the sole purpose of holding a final revocation hearing, meeting the guidelines articulated in this opinion, to determine whether revocation of Petitioner's parole should occur.

**13.** We realize that this conclusion may present the HPA with some practical problems. Since there are currently no federal prisons in Hawai'i, the HPA may have to wait until a parolee serves his or her federal prison sentence before holding a final revocation hearing to revoke the parolee's parole. Until the Hawai'i legislature amends the existing statutes, however, we believe this result is necessitated by *Morrissey* and *Black*.