Terry **WILLIAMS**, Petitioner,

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE**, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 21, 2000.

Decided April 10, 2000.

Reargument Denied June 8, 2000.

David Crowley, Bellefonte, for petitioner.

Susan M. Zeamer, Harrisburg, for respondent.

Before PELLEGRINI, J., FLAHERTY, J., and McCLOSKEY, Senior Judge.

PELLEGRINI, Judge.

Terry Williams (Williams) petitions for review of an order of the Pennsylvania Board of Probation and Parole (Board) revoking his parole and imposing backtime for parole violations arising out of his conviction of criminal offenses while on parole.

Williams was serving an aggregate term of five to 13 years for three counts of Aggravated Assault, Possession of an Instrument of Crime, Criminal Conspiracy, and for another charge of Aggravated Assault and a Violation of the Uniform Firearms Act, with a minimum release date of October 9, 1995, and a maximum release date of October 9, 2003. Williams was paroled from this sentence on February 24, 1997. On November 9, 1997, while on parole, Williams was arrested by the Philadelphia Police for Robbery, Possession of an Instrument of Crime, Simple Assault and Terroristic Threats, and on April 6, 1998, the Board lodged a detainer to him pending disposition of those charges. On May 27, 1998, he was taken into state custody to serve a sentence of eight to 18 years.

On July 8, 1998, the Board received verification of the conviction and on January 22, 1999, a hearing was held on the revocation of his parole as a convicted parole violator. At the hearing, Williams, through counsel, objected to the timeliness of the hearing because it was held beyond the 120–day period set forth in 37 Pa.Code § 71.4(1), which provides that "[a] revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or *nolo contendere* or of the guilty verdict at the

highest trial court level ..." On April 12, 1999, the Board issued an order recommitting Williams to serve 30 months backtime, and on August 26, 1999, the Board denied Williams' request for administrative relief. This appeal followed.[1]

Again, on appeal, Williams contends that his due process rights were violated because his parole revocation hearing was not held within 120 days as set forth in 37 Pa.Code § 71.4(1). Because the revocation hearing was not held within 120 days of the Board receiving official verification of his conviction, *Johnson v. Pennsylvania Board of Probation and Parole,* 129 Pa. Cmwlth. 652, 566 A.2d 918 (1989), *affirmed,* 525 Pa. 573, 583 A.2d 790 (1991), he then argues that the parole violation charges should be dismissed with prejudice. *See McDonald v. Pennsylvania Board of Probation and Parole,* 673 A.2d 27 (1996); *Johnson,* 566 A.2d at 922. The Board, however, contends that Williams' parole revocation need not be held within 120 days because he was in prison serving time for the new charges and points to 37 Pa.Code § 71.5(e), which provides:

> "Notwithstanding § 71.4 (relating to convictions for a new criminal offense), the Board may defer the revocation hearing until either partial or full service of a new sentence which parolee receives."

In effect, what the Board is contending is that the requirement in 37 Pa.Code § 71.4(1) that a final hearing be held within 120 days is inapplicable to those charged as convicted parole violators when they are already serving time as a result of their subsequent conviction. Williams counters, arguing that 37 Pa.Code § 71.5(e) must be struck down as violating his due process rights under the Fourteenth Amendment to the United States Constitution.

Despite the numerous appeals where the timeliness of the Board's revocation hearing involving a purported criminal parole violator has been at issue, bewilderingly, this is the first time that the Board has raised 37 Pa.Code § 71.5(e) since this provision was promulgated in its present form over a decade ago and necessarily the first time this Court has addressed its effect. To understand the genesis of this regulation, it is necessary to examine how the present 120–day rule embodied in 37 Pa.Code § 71.4(1) came about.

The procedures for revocation of parole in Pennsylvania and 37 Pa.Code § 71.4(1) arose from *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972),[2] where the United States Supreme Court, recognizing the parolee's interest in a conditional release, held that parole could not be revoked without certain procedural safeguards protecting due process rights. Applying *Morrissey,* in *U.S. ex rel. Burgess v. Lindsey,* 395 F.Supp. 404 (E.D.Pa. 1975), the United States District Court for the Eastern District of Pennsylvania, through then-District Court Judge A. Leon Higginbotham, while upholding the Board's practice of lodging a detainer based on a subsequent arrest or delaying the parole revocation hearing based on new criminal charges was not violating due process, went on to hold that due process required that the Board afford a convicted parole violator a final parole revocation hearing within a reasonable time after the guilty plea or verdict. In an unpublished order accompanying that decision, Judge Higginbotham required the amendment of the regulations to provide a hearing within 120 days of the official verification of the guilty plea or verdict. *Gant v. Pennsylvania Board of Probation and Parole,* 32 Pa.Cmwlth. 627, 380 A.2d 510 (1977).

---

1. Our scope of review of a parole revocation order is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether there was an error of law, and whether any constitutional rights have been violated. *Jordan v. Pennsyl-*

*vania Board of Probation and Parole,* 704 A.2d 190 (Pa.Cmwlth.1997), *appeal denied,* 555 Pa. 723, 724 A.2d 937 (1998).

2. *Morrissey* involved a parole revocation for technical violations.

As required by Judge Higginbotham's Order, the Board amended its regulations to provide in Section 71.4(2) that "[t]he hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or *nolo contendere* or the guilty verdict at the highest trial court level ..." 7 Pa. Bull. 490. At the time this provision was added in 1977, the regulations also provided for the predecessor to § 71.5(e) in Subsection (k) by providing that "Notwithstanding the provisions of § 71.4 of this Title (relating to conviction for a new criminal offense), the Board, **for cause shown,** may defer the final Revocation Hearing of a parolee convicted of a new criminal offense until either partial or full service of any new sentence which such parolee receives." 7 Pa. Bull. 491.

Shortly after *Lindsey* was decided in 1975, the Supreme Court again revisited a parolee's right to a revocation hearing and the timing of that hearing in *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). In *Moody,* the Supreme Court held that a parolee who had been convicted and incarcerated for one crime while on parole for another was not constitutionally entitled to a prompt parole revocation hearing for a parole violation warrant which had been issued but not executed.[3] In reaching this conclusion, the Court explained:

> [I]n cases such as this, in which the parolee admits or has been convicted of an offense plainly constituting a parole violation, the only remaining inquiry is

whether continued release is justified notwithstanding the violation. This is uniquely a 'prediction as to the ability of the individual to live in society without committing antisocial acts.' *Morrissey, supra,* [408 U.S.] at 480 [92 S.Ct. at 2599]. In making this prophecy, a parolee's institutional record can be perhaps one of the most significant factors. Forcing decision immediately after imprisonment would not only deprive the parole authority of this vital information, but since the other most salient factor would be the parolee's recent convictions, ... a decision to revoke parole would often be foreordained. Given the predictive nature of the hearing, it is appropriate that such hearing be held at the time at which prediction is both most relevant and most accurate – at the expiration of the parolee's intervening sentence. *Moody,* 429 U.S. at 89, 97 S.Ct. at 279–280.

It then went on to hold in accord with the federal statutory scheme that "the revocation hearing must be tendered within a reasonable time after the parolee is taken into custody, *Morrissey,* 408 U.S. at 488, [92 S.Ct. at 2603–04], we established execution of the warrant and custody under that warrant as the operative event triggering any loss of liberty attendant upon parole revocation." *Moody,* 429 U.S. at 87, 97 S.Ct. at 278–79. In other words, "the loss of liberty as a parole violator does not occur until the parolee is taken into custody under the warrant." *Id.*[4]

---

**3.** The applicable statutes involved in *Moody* were 18 U.S.C. §§ 4205 and 4207, prior to their amendment by "The Parole Commission and Reorganization Act", Pub.L. 94–233, 90 Stat. 219, *et seq.,* 18 U.S.C. § 4205, which provided that "[a] warrant for the retaking of any United States prisoner who has violated his parole may be issued only by the Board of parole ... and within the maximum term or terms for which he was sentenced." Section 4207 further provides that "[t]he Board may then, or at any time in its discretion, revoke the order of parole and terminate such parole ..."

**4.** In his dissent in *Moody,* Justice Stevens, joined by Justice Brennan, when characterizing the federal parole board's position as having "no obligation to go forward with the revocation hearing until after the parolee has completed the service of his sentence for the second offense" went on to state: "It may therefore wait as long as 10 or 20 years after commencing the revocation process by issuing a warrant. This position, I submit, can be tenable only if one assumes that the constitutional right to a fair hearing includes no right whatsoever to a prompt hearing. Precedent, tradition, and reason require rejection of that assumption." *Moody,* 429 U.S. at 91, 97

Specifically stating that as a result of the United States Supreme Court's decision in *Moody*, holding that due process was not violated where the authorities awaited completion of a new sentence to issue a warrant for the parole violation, the Board again amended its regulations in 1988 to reflect their current form in Section 71.5(e) as set forth above, *inter alia*, deleting the "for cause shown" requirement. 17 Pa. Bull. 3890. Relying on *Moody*, the Board contends that Section 71.5(e) allows for a deferral of a revocation hearing and is valid and cannot violate any of Williams' due process because he has not lost any liberty during partial or full time served on a new sentence.

■ Applying *Moody* to the facts in this case is difficult because the triggering event is the serving of the warrant that required the revocation hearing to be held was a right given by statute. It was for that reason that as long as only a detainer was lodged or the warrant was issued but not served, no hearing was statutorily triggered. Absent this federal statutory scheme, what *Moody* holds is that there is no requirement under the due process clause of the Fourteenth Amendment to hold a parole revocation hearing until there is a loss of a liberty interest, and because a parolee has suffered no loss of liberty when confined as the result of a subsequent criminal conviction, no parole revocation hearing is required until the inmate's sentence is complete or the inmate is paroled from serving the sentence resulting from the subsequent conviction. *United States v. Johnson*, 563 F.2d 362 (8th Cir.1977);[5] *Government of Virgin Islands v. James*, 929 F.Supp. 201 (D.V.I. 1996) (no due process violation by fact that revocation hearing did not occur for nearly three years after he pled guilty to crime of violence); *State v. Carreker*, 39 Ohio App.3d 112, 529 N.E.2d 951 (1987) (no requirement to hold a parole revocation hearing while in custody on other charges); *see also Ringor v. State*, 88 Hawai'i 229, 965 P.2d 162 (Ct.App.1998) (discussing the necessity of a final revocation hearing if an automatic parole revocation is required by statute). In essence, delaying the post-revocation hearing when serving a subsequent sentence in state court is no different than delaying a parole revocation hearing involving convicted parole violators incarcerated out-of-state until the expiration of their term and returned to the state which has lodged a parole violation detainer, a practice which has also been held to be constitutional.[6] *Carchman v. Nash*, 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985); *Harris v. Pennsylvania Board of Probation and Parole*, 38 Pa.Cmwlth. 391, 393 A.2d 510 (1978).[7] Because due process does not require a revocation hearing to be held when a parolee is being charged as a convicted parole violator while serving a sentence for a subse-

S.Ct. at 280 (Stevens, J., dissenting). He then goes on to state that he would have held that a parolee has a due process right "in changing the uncertainty associated with a pending change into the greater certainty associated with its disposition." *Moody*, 429 U.S. at 93, 97 S.Ct. at 281 (Stevens, J., dissenting).

5. In *Johnson*, the Eight Circuit held that as a result of *Moody*, "an immediate revocation hearing need not be provided on a parole violator's warrant where the parolee was incarcerated on a subsequent conviction by the same sovereign." *Johnson*, 563 F.2d at 364.

6. 37 Pa.Code § 71.4(1)(i) provides, in pertinent part:

If a parolee is confined outside the jurisdiction of the Department of Corrections, such as confinement out-of-state, confinement in a Federal correctional institution or confinement in a county correctional institution ... the revocation hearing shall be held within 120 days of official verification of the return of the parolee to a State correctional facility.

7. The only interest that Williams asserts is as a result of the outstanding warrant for the parole violation, while serving his new sentence, he is on "parole violator pending" status which affects his inmate status until resolved. However, classifications do not affect liberty interests or impose due process rights, as this argument was specifically rejected in *Moody*, 429 U.S. at 85, 97 S.Ct. at 278.

quent conviction, 37 Pa.Code § 71.5(e) does not violate due process rights to a timely hearing.[8]

Our inquiry would normally end due to our holding that the regulation does not violate Williams' due process rights. However, as we have stated previously in the opinion, we are bewildered why this regulation is being applied for the first time by the Board 12 years after it was promulgated. Our review of the process by which Section 71.5(e) was promulgated may offer some explanation for the failure of the Board to follow its own regulation for these many years.

In 1987, the Board, in accordance with Section 201 of the Commonwealth Documents Law,[9] 45 P.S. § 1201,[10] published in the Pennsylvania Bulletin, proposed amendments to the regulation exactly the way Section 71.5(e) now reads in the Pennsylvania Code. 17 Pa. Bull. 3890. As required by Section 202 of the Law, 45 P.S. § 1202, that requires "[b]efore taking action upon any administrative regulation or change therein the agency shall review and consider any written comments submitted pursuant to section 201," in response to comments made to the proposed amendments, the Board replied that "[t]he assistant defenders objected to the proposed deletion of a good cause requirement for deferral of revocation hearings

until after the service of a new sentence for a crime committed during the period of parole (§ 71.5(e)). The Board has retained the good cause requirement in response to this comment." 18 Pa. Bull. 251. While they stated that it was going to be retained, the Board did not do so in the final version of the regulation.

■ The process by which regulations are promulgated provides an important safeguard against the unwise or improper exercise of discretionary administrative power and includes public notice of a proposed rule, request for written comments, consideration of such comments, and hearings as appropriate. *Brinson v. Department of Public Welfare,* 163 Pa.Cmwlth. 408, 641 A.2d 1246 (1994). In this case, the law worked like it was designed to work – the Board promulgated the proposed regulation, comments were made, the Board agreed with the comments – except that the Board for some reason did not follow through with its response.

Accordingly, even though it is constitutional to allow deferring the revocation hearing until after either partial or full service of a new sentence, because the record contains no explanation of the reason that it did not follow through with its response that it was going to insert the "good cause" requirement back into Sec-

8. Williams also contends that 37 Pa.Code § 71.5(e) is inconsistent with Section 21.1 of the "Parole Act", Act of August 6, 1941, P.L. 861, 61 P.S. § 331.21a. That provision provides that backtime and original sentence must be served before any new sentence. However, there is no inconsistency because there is no backtime until there is a hearing.

9. Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1101–1602.

10. Section 1201 provides:
    Notice of Proposed Rule Making
    Except as provided in section 204 an agency shall give, in the manner provided in section 405 (relating to additional contents of temporary supplements) public notice of its intention to promulgate, amend or repeal any administrative regulation. Such notice shall include:

(1) The text of the proposed administrative regulation, except any portions thereof omitted pursuant to section 407 (relating to matter not required to be published), prepared in such a manner as to indicate the words to be added or deleted from the presently effective text thereof, if any.

(2) A statement of the statutory or other authority under which the administrative regulation or change therein is proposed to be promulgated.

(3) A brief explanation of the proposed administrative regulation or change therein.

(4) A request for written comments by any interested person concerning the proposed administrative regulation or change therein.

(5) Any other statement required by law.

tion 71.5(e), we remand back to the Board for a determination of why its answer to the comment that it was going to insert the good cause requirement back into the regulation was not followed.[11]

### *O R D E R*

AND NOW, this 10th day of April, 2000, this case is remanded to the Board for an explanation within sixty (60) days of the date of this order as to why its answer to the comment that it was going to insert the "good cause" requirement back into the regulation was not followed.

Jurisdiction retained.

---

**11.** Of course, if it finds that it was a "mistake" in publication, then the Board is to set forth the "good cause" of why the hearing was not held within 120 days of when it learned of his conviction.